UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

COLLEEN McTAGUE STORRS,      :     Case No. 1:15-cv-136
                             :
      Plaintiff,          :     Judge Timothy S. Black
vs.                            :
                             :
UNIVERSITY OF CINCINNATI,      :
                             :
      Defendant.        :

**ORDER RULING ON DEFENDANT'S
MOTIONS IN LIMINE (Docs. 80, 81)**

This civil action is before the Court on the two motions *in limine* filed by

Defendant University of Cincinnati (Docs. 80, 81) as well as the parties' responsive

memoranda (Docs. 84, 85, 86, 87).

## I.    BACKGROUND

In 2007, Plaintiff Colleen McTague Storrs ("Dr. McTague") was hired as a tenure-

track Assistant Professor in UC's Geography Department.  Dr. McTague successfully

applied for reappointment in 2009 and 2011.  In 2013, UC denied Dr. McTague's third

application for reappointment, citing her lack of publications.

On February 24, 2015, Dr. McTague filed the Complaint.  The Complaint alleged

that UC violated Title VII of the Civil Rights Act of 1964 by denying Dr. McTague's

2013 application for reappointment because of her gender and in retaliation for Dr.

McTague complaining of gender discrimination.  The Complaint also alleged that UC

violated the Equal Pay Act ("EPA") by paying Dr. McTague less than male Assistant

Professors. Finally, the Complaint alleged that UC violated the Family & Medical Leave Act ("FMLA") by interfering with Dr. McTague's FMLA leave during the 2011-2012 academic year and by allegedly retaliating against Dr. McTague for taking FMLA leave.

On September 26, 2017, the Court entered an Order granting in part, and denying in part, UC's motion for summary judgment. (Doc. 73). Specifically, the Court granted UC's motion on the Title VII claims because Dr. McTague did not present a *prima facie* case of discrimination or retaliation, UC proffered a legitimate reason for denying Dr. McTague's application for reappointment (her lack of publications), and Dr. McTague did not show that reason was pretext for sex discrimination or retaliation; granted UC's motion on the FMLA interference claim because there was no evidence UC interfered with Dr. McTague's FMLA leave; and granted UC's motion on the FMLA retaliation claim because Dr. McTague did not show that UC's stated reason for denying her application for reappointment was pretext for FMLA discrimination.

However, the Court denied UC's motion for summary judgment on the EPA claim because of the heightened burden of proof imposed on EPA defendants. The Court explained that, while UC proffered reasons "other than sex" that may legitimately explain the pay discrepancy between Dr. McTague and her male colleagues, UC did not submit sufficient Rule 56 evidence at the summary judgment stage to prove its affirmative defense "so clearly that no rational jury could have found to the contrary," as is required of a defendant seeking judgment on an EPA claim. (Doc. 73 at 41-46).

Accordingly, the sole issue remaining for trial is Dr. McTague's claim that UC violated the EPA by paying her less than male Assistant Professors in the Geography Department.

## II.     STANDARD OF REVIEW

"A ruling on a motion *in limine* is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Generally, "[m]otions *in limine* are … used to … eliminat[e] evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Because *in limine* rulings are advisory in nature, a court may alter its ruling during the course of the trial. *Luce v. United States*, 469 U.S. 38, 41-42 (1984). "Courts are generally reluctant to grant broad exclusions of evidence *in limine* because a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Ohio Willow Wood Co. v. ALPS South, LLC*, No. 2:04cv1223, 2014 U.S. Dist. LEXIS 103107, at *5 (S.D. Ohio July 29, 2014).

Similar to other evidentiary rulings, the decision to grant or deny a motion *in limine* is within the sound discretion of the trial court. *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 852 (7th Cir. 1998). However, "[o]rders *in limine* which exclude broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Rather, motions *in limine* are "generally confined to very specific evidentiary issues of an extremely prejudicial nature." *Brown v.*

*Oakland Cnty.*, No. 14-CV-13159, 2015 WL 5317194, at *2 (E.D. Mich. Sept. 10, 2015).

If the evidence is not plainly inadmissible on all potential grounds, the Court's

"evidentiary rulings should be deferred until trial so that questions of foundation,

relevancy and potential prejudice may be resolved in proper context." *Indiana Ins. Co.*,

326 Supp. 2d at 846.

## III.    ANALYSIS

### A.  Evidence regarding pretrial motions.

UC asks the Court to exclude "[a]ny evidence regarding motions for summary

judgment or pretrial rulings in this case, and regarding Colleen McTague Storrs's

dismissed claims of sex discrimination or retaliation under Title VII, and her claims of

interference or retaliation under the FMLA."  (Doc. 80 at 3).  UC argues the fact that

either party filed pretrial motions in this matter is not relevant to any factual question to

be resolved by the jury, and the Court should not allow "evidence of statements made in

briefing and argument of the motions."  (*Id.* at 4).  UC further argues that Dr. McTague

should be barred from offering evidence of discrimination and retaliation, as those claims

have been dismissed.  (Doc. 80 at 3-4).

Dr. McTague agrees that it would be inappropriate for either counsel to discuss

preliminary motions and orders in the presence of the jury, and does not intend to present

evidence "relating to her pursuit of Title VII sex discrimination, Title VII retaliation,

FMLA interference or FMLA retaliation at trial."  (Doc. 85 at 1-2).  Dr. McTague argues,

however, that statements in the summary judgment briefs may be admissible, and that she

should be able to present evidence of discrimination to prove her EPA claim and/or rebut UC's affirmative defenses. (*Id.* at 2-3).

Upon consideration, to the extent UC's motion *in limine* (Doc. 80) seeks to exclude evidence of, and arguments in, pretrial motions, it is **GRANTED IN PART** and **DENIED IN PART** as explained *infra*.

First, the Court agrees with both parties that they may not present the fact that UC filed a motion for summary judgment, or the Court's ruling on UC's motion for summary judgment, to the jury, as they are not relevant to the issues to be decided at trial.

Second, the Court agrees with Dr. McTague that a blanket exclusion of all "statements made in briefing" would be overbroad and inappropriate. In some circumstances, statements made by either party in pretrial filings, including the summary judgment pleadings, could constitute admissible evidence. *See United States v. Burns*, 109 Fed. Appx. 52, 58 (6th Cir. 2004) ("We have discretion to consider a statement made in a brief to be a judicial admission, binding on both this court and the trial court.).[1]

Third, the Court agrees with Dr. McTague that she may present evidence of sex discrimination to the extent it goes to her claim of wage discrimination. To prove her EPA claim, Dr. McTague must show that she was paid less than her male comparators "on the basis of sex." *See* 29 U.S.C. § 206(d)(1). In order to establish that a three-year statute of limitations applies rather than the standard two-year period, Dr. McTague must show that UC's violation was "willful." 29 U.S.C. § 255(a). If, as anticipated, UC

---

[1] The parties argued the merits of Dr. McTague's EPA claim in their summary judgment briefs. As a practical matter, the Court obviously cannot exclude all "statements made in briefing" or the parties would not have anything to present at trial.

argues that Dr. McTague was paid less than male Assistant Professors due to a reason "other than sex," including merit, Dr. McTague may present evidence that UC's reason is pretext; that is, that the factors relied on by UC to account for the wage disparity were not "adopted for a legitimate business reason and used reasonably in light of the employer's stated purpose." *EEOC v. J.C. Penney Co.*, 843 F.2d 249, 254 (6th Cir. 1988) (citation omitted).

Accordingly, <u>Dr. McTague may present facts and argument regarding sex discrimination to the extent these facts (1) prove the elements of her EPA claim, (2) demonstrate that UC acted willfully, and (3) rebut UC's affirmative defense that the discrepancy was based on a factor "other than sex."</u> Although intentional discrimination is not an element of an EPA claim, courts typically allow evidence that demonstrates that the defendant acted willfully or suggests that the defendant's affirmative defense is pretextual. *See Boaz v. Fed. Express Corp.*, 107 F. Supp. 3d 861, 891 (W.D. Tenn. 2015) ("Although intent to discriminate is not a requisite element for making out an EPA claim, a showing of discriminatory motivation may be used to demonstrate that an affirmative defense on which the employer relies is in fact pretextual.") (quotation omitted); *Simpson v. Merchs. & Planters Bank*, 441 F.3d 572, 580 (8th Cir. 2006) (jury's verdict that the defendant acted willfully was adequately supported by evidence of sex discrimination including, *inter alia*, that defendant's personnel policy treated male and female employees differently by addressing scheduling problems for "ladies . . . with children going to school.").

These facts would include, for example, facts identified by Dr. McTague in her response that go to her own merit, including the number and types of courses she taught and the amount of service she performed. (Doc. 85 at 2-3). The fact that Dr. McTague relied on some of these arguments in an attempt to make a *prima facie* showing of her claims under Title VII and the FMLA does not mean she cannot also use them to show willful wage discrimination or rebut UC's affirmative defenses.

Fourth, the Court agrees with UC that Dr. McTague may not present facts or arguments that pertain <u>only</u> to her Title VII and FMLA claims that have been dismissed. Accordingly, <u>Dr. McTague may not present any evidence or argument that UC denied her application for reappointment because of her sex, interfered with her FMLA leave, or retaliated against her for complaining about sex discrimination and/or taking FMLA leave</u>.[2]

## B. Use of the words "retaliation," "complaints" or "protected activity."

UC asks the Court to prohibit Dr. McTague and her counsel from using the terms "retaliation," "complaints" or "protected activity." (Doc. 80 at 5). UC argues that use of

---

[2] The Court notes that Dr. McTague's Title VII discrimination and retaliation claims were limited to the issue of UC's denial of Dr. McTague's application for reappointment. (*See* Doc. 73 at 27, "the only employment action the Court will consider in evaluating Dr. McTague's Title VII claims is the denial of her application for reappointment."). The Court already held that UC did not deny Dr. McTague's application for reappointment because of her sex or in retaliation for complaining about sex discrimination, and Dr. McTague is not permitted to relitigate those issues at trial. However, throughout this litigation, Dr. McTague has suggested that UC discriminated against her in <u>other</u> ways, for example, by assigning her a higher courseload and service requirements than male Assistant Professors. (*See* Doc. 70 at 11). These bases of discrimination were *not* part of the Title VII claims that the Court dismissed, and *may* be admissible for one of the purposes listed above (*i.e.*, willfulness or pretext).

these terms, in any context, would constitute an attempt by Dr. McTague to relitigate the retaliation claims already dismissed by the Court. (*Id.*)

Dr. McTague argues that absolutely excluding these terms is both unnecessary, because she does not intend to relitigate the dismissed retaliation claims, and inappropriate, because there may be legitimate uses for these terms at trial. (Doc. 85 at 3-4). As an example, Dr. McTague argues that she may introduce evidence that she "complained" to the Geography Department Head about her compensation in an effort to demonstrate UC's knowledge of the alleged EPA violation. (*Id.*)

The Court agrees with Dr. McTague. The purpose of a motion *in limine* is to exclude evidence that is clearly inadmissible **_for any purpose_**. *Indiana Ins. Co.*, 326 F. Supp. 2d at 846. Without context, the Court cannot say that the terms "retaliation," "complaints" or "protected activity" are clearly inadmissible for any purpose. Dr. McTague is correct that evidence she "complained" to UC about the alleged pay disparity may establish a willful violation of the EPA and is therefore relevant to her claim. *See Pollis v. New Sch. For Soc. Research*, 132 F.3d 115, 119-120 (2d Cir. 1997) ("This evidence—that the [defendant] knew that [plaintiff] was paid less than comparable males, but did not rectify the situation—is sufficient to support the jury's finding of reckless or willful violation of the Equal Pay Act."); *Cooke v. United States*, 85 Fed. Cl. 325, 352 (Fed. Cl. 2008) ("The court finds that [defendant's] conduct in ignoring [plaintiff's] concerns about her pay differential demonstrated a reckless disregard of the Equal Pay Act's requirements.").

The Court is comfortable with the fact that both counsel have agreed to not relitigate the claims already dismissed by the Court, including Dr. McTague's claims for retaliation under Title VII and the FMLA, and that UC may object to the specific use of any of these terms at trial. Accordingly, to the extent UC seeks the absolute exclusion of the terms "retaliation," "complaints," and "protected activity," UC's motion *in limine* (Doc. 80) is **DENIED**.

### C. Evidence prior to February 24, 2013.

UC argues the statute of limitations for EPA claims is two years, and accordingly, the Court should exclude all evidence relating to Dr. McTague's compensation claims, or the compensation of her alleged comparators, prior to February 24, 2013 (two years prior to the date of the Complaint). (Doc. 80 at 5-6). UC acknowledges that the statute of limitations may be three years for a "willful" violation of the EPA, but argues that, in light of the Court's dismissal of the Title VII sex discrimination claim, the Court "can make a preliminary ruling that there will not be any evidence upon which it could find a willful violation of the Equal Pay Act." (*Id.*)

Dr. McTague argues that evidence of wage discrimination need not be limited to the two year statute of limitations, and whether UC's violation was "willful" is a question for the jury. (Doc. 85 at 4).

UC's motion is not well-taken for multiple reasons. First, the Court's previous holding that UC did not unlawfully discriminate against Dr. McTague by denying her application for reappointment does not preclude a finding that UC discriminated against Dr. McTague by willfully paying her less than male Assistant Professors.

Second, UC's argument that the statute of limitations bars evidence of EPA violations prior to the limitations period is directly contradicted by the applicable federal regulations, which state:

> It is immaterial that a member of the higher paid sex ceased to be employed prior to the period covered by the applicable statute of limitations period for filing a timely suit under the EPA. The employer's continued failure to pay the member of the lower paid sex the wage rate paid to the higher paid predecessor constitutes a prima facie continuing violation. Also, it is no defense that the unequal payments began prior to the statutory period.

29 C.F.R. § 1620.13(b)(5). Accordingly, "the statute of limitations does not dictate which co-workers the plaintiff may submit as comparators." *Brinkley-Obu v. Hughes Training*, 36 F.3d 336, 346 (4th Cir. 1994); *see also Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011) ("[e]vidence of wage discrimination need not be confined to the EPA's two year limitation period, however, for a court may consider relevant evidence from before that period while assessing the worker's claims."); *Vereen v. Woodland Hills Sch. Dist.*, Case No. CV-06-462, 2008 U.S. Dist. LEXIS 23075, * 66 (W.D. Pa. Mar. 24, 2008) ("[plaintiff] may, however, use male employees employed by the School District prior to the limitations period as comparators for purposes of establishing her prima facie case.").

Third, evidence of past discrimination—including wage discrimination—may be admissible for purposes other than establishing a violation, such as demonstrating that the wage discrimination was willful or casting doubt on an employer's affirmative defense. *See Dindinger v. Allsteel, Inc.*, Case No. 3:11-cv-126, 2016 U.S. Dist. LEXIS 179502, at **38-39 (S.D. Iowa Jan. 4, 2016) (evidence of wage discrimination toward other

employees, outside the statute of limitations, was relevant to "whether [Defendant] willfully violated the EPA" and "to its affirmative defenses").

For the foregoing reasons, to the extent UC's motion *in limine* seeks to exclude all evidence prior to February 24, 2013, it is **DENIED**.

### D. Evidence after summer 2014.

UC argues that because Dr. McTague last worked at UC on April 26, 2014, and retired effective September 1, 2014, that "[c]laims for pay beyond the summer of 2014, and any evidence or information related to such a claim, should be excluded." (Doc. 80 at 6).

Dr. McTague argues that UC is attempting to preclude evidence of the effect of Dr. McTague's salary on her retirement benefits, which is based upon her last three years of compensation, and recoverable under the EPA. (Doc. 85 at 6).

To the extent UC's motion *in limine* (Doc. 80) seeks to exclude evidence after summer 2014, it is **GRANTED IN PART** and **DENIED IN PART**, as explained *infra*.

First, the Court agrees with UC that Dr. McTague may not present evidence of lost salary after she retired. As an example, Dr. McTague's expert provided an analysis of Dr. McTague's damages that included lost salary for each school year until 2023 under the assumption that Dr. McTague would have worked until she was 70 had she not been unlawfully "terminated" by UC. (Doc. 81-2 at 6). Because the Court already determined UC had a legitimate, non-discriminatory reason for denying Dr. McTague's application for reappointment, evidence of any lost salary Dr. McTague "would have" earned after

the denial of her application and subsequent retirement is not relevant and is inadmissible.

Second, the Court agrees with Dr. McTague that she may present evidence as to how UC's alleged wage discrimination <u>during the period for which she is permitted to recover</u> affected her retirement benefits. Retirement benefits are considered recoverable "wages" under the EPA; the fact that they are received later, after an employee retires, is of no consequence. *See Carter v. AT&T*, 870 F. Supp. 1438, 1449 (S.D. Ohio 1994); *see also* 29 C.F.R. § 1620.10 (defining "wages" as "all payments made to [or on behalf of] an employee as remuneration for employment," including "[f]ringe benefits"); 29 C.F.R. § 1620.11 ("Fringe benefits" includes "retirement benefits.").

### E. Evidence pertaining to Changjoo Kim and Richard Beck.

UC asks the Court to exclude any testimony regarding the compensation of Changjoo Kim and Richard Beck. UC argues that Drs. Kim and Beck were promoted from Assistant Professors to tenured Professors before the applicable statute of limitations period (in 2011 and 2012, respectively). (Doc. 80 at 6-7). UC argues that because Drs. Kim and Beck were tenured Professors during the limitations period, they are not proper comparators for Dr. McTague, a tenure-track Assistant Professor. (*Id.*)

This argument is not well-taken. For the reasons explained in Section III(C), *supra*, compensation UC paid to Drs. Kim and Beck while they were Assistant Professors may be relevant to Dr. McTague's claims.

To the extent UC's motion *in limine* (Doc. 80) seeks to exclude testimony regarding compensation paid to Drs. Kim and Beck, it is **DENIED**.

### F. Any testimony or evidence regarding Dr. McTague's husband's serious health condition, or treatment thereof.

UC asks the Court to exclude any testimony or evidence from Dr. McTague or her counsel regarding the serious health condition, or treatment, of Dr. McTague's husband, Dr. Bruce Storrs.  (Doc. 80 at 7-8.)  UC argues that Dr. Storrs' diagnosis and treatment are only relevant to Dr. McTague's FMLA interference and retaliation claims which have been dismissed by the Court. (*Id.*)

Dr. McTague argues that she missed an entire academic year while caring for her husband, and she should be permitted to present evidence regarding his diagnosis and treatment for Non-Hodgkin Lymphoma in order to explain why her rate of publication was less than her male comparators.  (Doc. 85 at 7.)

The Court agrees with UC.  Dr. McTague's remaining EPA claim leaves only two issues for trial.  The first issue is whether Dr. McTague can establish a case of wage discrimination under the EPA, that is, whether UC "pays different wages to employees of opposite sexes" for "equal work."  *Kahn v. Dean & Fulkerson, P.C.*, No. 99-1015, 2000 U.S. App. LEXIS 29386, at * 18 (6th Cir. Nov. 13, 2000) (quotation omitted); 29 U.S.C. § 206(d)(1).  If so, the second issue is whether UC can show that discrepancy is based on a factor "other than sex."  29 U.S.C. § 206(d)(1).

Respectfully, evidence regarding Dr. Storrs' diagnosis and treatment is not relevant to either of these issues; it will not make any fact of consequence to this litigation more or less probable.  *See* Fed. R. Evid. 401.  Additionally, the limited

probative value of this evidence is substantially outweighed by its potential to unfairly prejudice UC or mislead the jury. *See* Fed. R. Evid. 403.

Accordingly, to the extent UC's motion *in limine* (Doc. 80) seeks to exclude evidence regarding Dr. Storrs' diagnosis or treatment of a serious health condition, it is **GRANTED**. As a matter of clarification, the Court will allow Dr. McTague to present evidence as to the dates she was on FMLA leave as well as arguments that such time should not count against her publication rate.

### G. Dr. Storrs' testimony.

UC asks the Court to exclude any testimony from Dr. Storrs, who was identified as a witness, regarding: (1) an incident in 2010 that supported Dr. McTague's claim of sex discrimination and (2) Dr. McTague's damages. (Doc. 80 at 8). UC argues that Dr. Storrs' testimony is not relevant because Dr. McTague's claim for sex discrimination has been dismissed and the EPA does not allow for recovery of compensatory damages. (*Id.*)

Dr. McTague does not intend to have Dr. Storrs testify, and does not intend to present any evidence regarding the 2010 incident to which UC refers. (Doc. 85 at 7).

The Court agrees with UC that testimony from Dr. Storrs is not relevant to Dr. McTague's remaining claim. Accordingly, to the extent UC's motion *in limine* (Doc. 80) seeks to exclude any testimony from Dr. McTague's husband, Dr. Storrs, it is **GRANTED**.

### H. Emotional Damages.

UC argues that Dr. McTague should be excluded from offering evidence of emotional damages, which includes evidence of her seeking counseling, psychological

treatment and/or psychiatric treatment that Dr. McTague attributed to her dismissed claims of discrimination and retaliation. (Doc. 80 at 8).

Dr. McTague recognizes that she is not entitled to emotional distress damages under the EPA and does not intend to present any evidence relating to her treatment received as a result of the emotional distress she suffered. (Doc. 85 at 8).

The Court agrees with UC that evidence of emotional damages is not relevant to Dr. McTague's remaining claim. Accordingly, to the extent UC's motion *in limine* (Doc. 80) seeks to exclude evidence of Dr. McTague's alleged emotional damages, it is **GRANTED**.

### I. References to other allegations or claims against UC.

UC asks the Court to exclude "[u]nrelated claims, incident or lawsuits involving the University of Cincinnati, the State of Ohio or the Ohio Attorney General's office and its employees." (Doc. 80 at 9). UC argues that, as large public institutions, the University of Cincinnati, the State of Ohio, and the Attorney General's office have been parties to a number of lawsuits in the past that have no bearing on the EPA claim at issue in this case. (*Id.*) UC argues that evidence of claims unrelated to Dr. McTague's EPA claim would unduly prejudice UC. (*Id.*)

Dr. McTague does not oppose UC's motion to the extent it "relates to other lawsuits or allegations by individuals outside of the Geography Department," but argues she should be entitled to present "other evidence of unequal pay, or of gender discrimination potentially motivating the unequal pay in the Geography Department." (Doc. 85 at 9).

The Court agrees with Dr. McTague.  Evidence of other instances of gender discrimination may be admissible for the purpose of showing a discriminatory intent and rebutting UC's affirmative defenses.  *See Dindinger*, 2016 U.S. Dist. LEXIS 179502, at **38-39 ("Me too" evidence of wage discrimination toward other non-party employees was relevant to "whether [Defendant] willfully violated the EPA" and "to its affirmative defenses").

Accordingly, UC's motion *in limine* (Doc. 80) is **GRANTED IN PART** and **DENIED IN PART** to the extent it seeks to exclude references to other allegations or claims against UC.  Specifically, the motion is **DENIED** to the extent it seeks to exclude evidence of unequal pay in the Geography Department or gender discrimination potentially motivating the unequal pay in the Geography Department.  To the extent the motion seeks the exclusion of other unrelated claims or allegations, it is **GRANTED**.

**J. References to UC's financial resources.**

UC asks the Court to exclude evidence regarding the size, financial condition or resources of UC, the State of Ohio, or the Ohio Attorney General's office, or her own comparative lack of wealth or financial capacity.  (Doc. 80 at 10-11).  UC argues this evidence is not relevant and would confuse and inflame the jury.  (*Id.*)

Dr. McTague does not oppose UC's motion relating to "financial position or resources to pay a verdict."

The Court agrees with UC that any information regarding the size, financial condition, or financial resources of UC, the State of Ohio, or the Attorney General's office is not relevant, poses a danger of confusing or inflaming the jury, and is excludable

under Federal Rule of Evidence 403.  Accordingly, to the extent UC's motion *in limine* (Doc. 80) seeks to exclude evidence of UC's financial resources, it is **GRANTED**.

### K.  References to "sending a message" or acting as the "conscience of the community."

UC asks the Court to exclude any reference or argument by Dr. McTague or her counsel that the jurors should "send a message" to UC, the State of Ohio, or the Attorney General's office, or that the jurors should act as the "conscience of the community." (Doc. 80 at 11).  UC argues these statements are prejudicial in that they urge the jury to render its verdict based on "passion and prejudice."  (*Id.*)

Dr. McTague does not oppose UC's motion relating to asking the jury to "send a message" or to act as the "conscience of the community."  (Doc. 85 at 9).

The Court agrees with UC (and Dr. McTague) that these statements should be excluded as they would inappropriately ask the jury to assume a position adversarial to UC.  *See Whitehead v. Food Max*, 163 F.3d 265, 277 (5th Cir. 1998) (explaining that "conscience of the community" arguments can distract the jury from its sworn duty to reach a fair and just verdict).   Accordingly, to the extent UC's motion *in limine* (Doc. 80) asks the Court to exclude references by Dr. McTague or her counsel that the jurors should "send a message" to UC, the State of Ohio, or the Attorney General's office, or act as the "conscience of the community," it is **GRANTED**.

### L.  The "Golden Rule."

UC asks the Court to exclude any argument by Dr. McTague or her attorneys that the jury should "put themselves in [Dr. McTague's] place, or image that [Dr. McTague]

is a relative or friend" when deliberating. (Doc. 80 at 12). UC argues it is improper for an attorney to argue that the jury should "put themselves in the shoes of the plaintiffs and do unto them as they would have done unto them under similar circumstances." (*Id.*)

Dr. McTague does not oppose UC's motion on this basis. (Doc. 85 at 9).

The Court agrees with UC that "golden rule" style arguments are improper because they ask jurors to be partial. *See Minato v. Scenic Airlines, Inc.*, 908 F.2d 977 at * 5 (9th Cir. 1990) ("courts have generally found the 'Golden Rule' argument improper because a jury which has put itself in the shoes of one of the parties is no longer an impartial jury"). Accordingly, to the extent UC's motion *in limine* (Doc. 80) seeks to exclude "golden rule" arguments, it is **GRANTED**.

## I. Dr. McTague's expert testimony.

Finally, UC asks the Court to exclude testimony from Dr. McTague's expert witness, Harvey Rosen, Ph.D. UC argues that Dr. Rosen's report should be excluded because: (1) he only identifies damages concerning Dr. McTague's termination, not her EPA claim, (2) the report does not identify the methods Dr. Rosen used to arrive at his opinion, and (3) the report does not contain required disclosures, including his qualifications, a list of cases in which Dr. Rosen testified as an expert in the past four years, and the compensation to be paid for the study and testimony in this case. (*Id.*)

Dr. McTague argues Dr. Rosen's report sufficiently explains his methodology, and that Plaintiff cured the omissions to the report by subsequently providing UC with Dr. Rosen's curriculum vitae, compensation information, and a list of cases in which he testified as an expert. (Doc. 84 at 3).

The Court agrees with Dr. McTague that the report sufficiently identifies both the methodology and facts Dr. Rosen used to determine what damages Dr. McTague incurred as a result of being paid less than her male comparators. Specifically, the report states Dr. Rosen computed Dr. McTague's "past economic loss" by "computing her salary differential as an Assistant Professor to other Assistant Professors in her department." (Doc. 81-2 at 1). A review of Table 1 clearly demonstrates that Dr. Rosen obtained the salaries of the male Assistant Professors from Documents Bates Numbered DEFENDANT 000217-000226, calculated the average salary paid to those male Assistant Professors, and subtracted Dr. McTague's salary from the average salary of her male comparators. (*Id.* at 5). UC is correct that Dr. Rosen's report, which was prepared prior to the Court's ruling on UC's motion for summary judgment and includes a comprehensive overview of all damages Dr. McTague sought in this case, does not specifically attribute any damages to the EPA claim. Still, it is clear to the Court from Dr. Rosen's explanation, and the tables attached thereto, how he calculated the loss attributable to Dr. McTague's claim that she was paid less than her male comparators.

Nevertheless, the Court agrees with UC that Dr. Rosen should be excluded as an expert witness. Rule 26(a) requires an expert report to contain, *inter alia*, the witness's qualifications, including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and a statement of the compensation to be paid for the study and testimony. Fed. R. Civ. P. 26(a)(2)(B)(iv)-(vi).

Here, Dr. McTague's expert disclosures were due on April 1, 2016. (Doc. 30). On April 1, 2016, Dr. McTague provided UC a copy of Dr. Rosen's report that did not contain Dr. Rosen's qualifications, a list of publications, a list of other cases in which he testified, or information pertaining to his compensation. (Doc. 87 at 2-3). Dr. McTague did not provide that information until January 18, 2018—almost two years after it was due, after the expert discovery deadline, and <u>less than a month</u> before trial. (*Id.* at 3).

Having determined Dr. Rosen's report did not comply with Rule 26(a), the issue becomes whether exclusion is an appropriate remedy. Rule 37(c)(1) states that "[i]f a party fails to provide information […] as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37 requires "absolute compliance" with Rule 26(a). *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 905, 909 (N.D. Ohio 2008) (citation omitted). When an expert report does not provide the required disclosures under Rule 26(a)(2)(B), the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that the omissions were either justified or harmless. *Id.* The burden of proof is on the potentially sanctioned party to prove harmlessness or justification. *Id.*

Here, Dr. McTague has not set forth any argument that non-compliance with Rule 26(a) was "substantially justified." Instead, she argues the omissions were "harmless" because they were not made in bad faith and were recently cured.

The Court does not agree. Information regarding an expert's qualifications, including his publications and prior testimony, is essential for an opponent to prepare for

cross-examination either at a deposition or trial. *See Sowell v. United Container Mach., Inc.*, Case No. 02-2004-JWL, 2002 U.S. Dist. LEXIS 21471, at * 5 (D. Kan. Nov. 1, 2002) (explaining that an expert's "publications, compensation, and prior testimony" is essential for the opponent to prepare an adequate defense, and omission of that information is not harmless); *Pineda v. City & County of San Francisco*, 280 F.R.D. 517, 521-22 (C.D. Cal. 2012) (plaintiff's expert's failure to include a list of prior cases in which the expert testified was not harmless because it undermined the ability of the defendant to "properly prepare for an effective deposition or cross-examination" of the expert); *Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 300 (D. Nev. 1998) (failure to disclose prior recorded testimony was not "harmless" because that information is "designed to give the other party access to useful information to meet the proposed expert's opinions").

Here, Dr. McTague's failure to timely disclose information pertaining to Dr. Rosen's qualifications, prior testimony, publications, and compensation until <u>less than a month before trial</u> put UC at a disadvantage in preparing its case. *Id.* The burden to prove that the omissions were "harmless" is on Dr. McTague, and she has simply not set forth adequate argument from which the Court could so conclude.

Accordingly, UC's motion *in limine* to exclude the testimony of Dr. Rosen (Doc. 81) is **GRANTED**.

## IV.    CONCLUSION

For the foregoing reasons:

1.     UC's motion *in limine* (Doc. 80) is **GRANTED IN PART** and **DENIED IN PART**; and

2.     UC's motion *in limine* to exclude Plaintiff's proffered expert witness (Doc. 81) is **GRANTED**.


**IT IS SO ORDERED**.


Date:  February 2, 2018

Timothy S. Black
United States District Judge