UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| COLLEEN McTAGUE STORRS, | : | Case No. 1:15-cv-136 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| UNIVERSITY OF CINCINNATI, | : | |
| | : | |
| Defendant. | : | |

**ORDER RULING ON PLAINTIFF'S
MOTIONS IN LIMINE (Docs. 78, 79)**

This civil action is before the Court on the two motions *in limine* filed by Plaintiff Colleen McTague Storrs ("Dr. McTague") (Docs. 78, 79) as well as the parties' responsive memoranda (Docs. 82, 83, 88).

## I. BACKGROUND

In 2007, Plaintiff Colleen McTague Storrs ("Dr. McTague") was hired as a tenure-track Assistant Professor in UC's Geography Department. Dr. McTague successfully applied for reappointment in 2009 and 2011. In 2013, UC denied Dr. McTague's third application for reappointment, citing her lack of publications.

On February 24, 2015, Dr. McTague filed the Complaint. The Complaint alleged that UC violated Title VII of the Civil Rights Act of 1964 by denying Dr. McTague's 2013 application for reappointment because of her gender and in retaliation for Dr. McTague complaining of gender discrimination. The Complaint also alleged that UC violated the Equal Pay Act ("EPA") by paying Dr. McTague less than male Assistant Professors. Finally, the Complaint alleged that UC violated the Family & Medical Leave

Act ("FMLA") by interfering with Dr. McTague's FMLA leave during the 2011-2012 academic year and by allegedly retaliating against Dr. McTague for taking FMLA leave.

On September 26, 2017, the Court entered an Order granting in part, and denying in part, UC's motion for summary judgment. (Doc. 73). Specifically, the Court granted UC's motion on the Title VII claims because Dr. McTague did not present a *prima facie* case of discrimination or retaliation, UC proffered a legitimate reason for denying Dr. McTague's application for reappointment (her lack of publications), and Dr. McTague did not show that reason was pretext for sex discrimination or retaliation; granted UC's motion on the FMLA interference claim because there was no evidence UC interfered with Dr. McTague's FMLA leave; and granted UC's motion on the FMLA retaliation claim because Dr. McTague did not show that UC's stated reason for denying her application for reappointment was pretext for FMLA discrimination.

However, the Court denied UC's motion for summary judgment on the EPA claim because of the heightened burden of proof imposed on EPA defendants. The Court explained that, while UC proffered reasons "other than sex" that may legitimately explain the pay discrepancy between Dr. McTague and her male colleagues, UC did not submit sufficient Rule 56 evidence at the summary judgment stage to prove its affirmative defense "so clearly that no rational jury could have found to the contrary," as is required of a defendant seeking judgment on an EPA claim. (Doc. 73 at 41-46).

Accordingly, the sole issue remaining for trial is Dr. McTague's claim that UC violated the EPA by paying her less than male Assistant Professors in the Geography Department.

## II. STANDARD OF REVIEW

"A ruling on a motion *in limine* is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Generally, "[m]otions *in limine* are … used to … eliminat[e] evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Because *in limine* rulings are advisory in nature, a court may alter its ruling during the course of the trial. *Luce v. United States*, 469 U.S. 38, 41-42 (1984). "Courts are generally reluctant to grant broad exclusions of evidence *in limine* because a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Ohio Willow Wood Co. v. ALPS South, LLC*, No. 2:04cv1223, 2014 U.S. Dist. LEXIS 103107, at *5 (S.D. Ohio July 29, 2014).

Similar to other evidentiary rulings, the decision to grant or deny a motion *in limine* is within the sound discretion of the trial court. *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 852 (7th Cir. 1998). However, "[o]rders *in limine* which exclude broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Rather, motions *in limine* are "generally confined to very specific evidentiary issues of an extremely prejudicial nature." *Brown v. Oakland Cnty.*, No. 14-CV-13159, 2015 WL 5317194, at *2 (E.D. Mich. Sept. 10, 2015). If the evidence is not plainly inadmissible on all potential grounds, the Court's "evidentiary rulings should be deferred until trial so that questions of foundation,

3

relevancy and potential prejudice may be resolved in proper context." *Indiana Ins. Co.*, 326 Supp. 2d at 846.

## III. ANALYSIS

### A. Evidence regarding AAUP grievance procedures.

Dr. McTague asks the Court to exclude evidence at trial that she did not grieve her concerns of unequal pay through the American Association of University Professors' ("AAUP") grievance process. (Doc. 78 at 1).

The Collective Bargaining Agreement ("Agreement") between UC and the AAUP provides a "grievance process" that allows faculty members to request an increase in compensation in order to, *inter alia*, correct inequities in salary, including but not limited to those on the basis of gender or race, or to reward outstanding professional contributions. The Agreement provides:

> 15.1. In the event that the Administration wishes to make salary or benefit adjustments which are more favorable than those called for in this Agreement to any individual member of the Bargaining Unit for purposes of matching a bona fide offer from a rival institution, of correcting inequities not otherwise dealt with in this Agreement, of correcting inequities proscribed by Article 4.1, including but not limited to those on the basis of gender or race, or of rewarding outstanding professional contributions, it is free to do so. Care will be taken to ensure that such professional contributions are clearly above and beyond those typically recognized through a merit increase program. When such individual adjustments are made, the Administration shall inform the AAUP of the adjustments thirty (30) days before they are implemented, and shall state the reasons with the specific documentation leading to the adjustment. In any one fiscal year the total dollar value of such awards shall not exceed one-half percent (.5%) of the Bargaining Unit member salary base, except that documented bona fide offers shall be an exception should the one-half percent (.5% cap be reached. Adjustments made under this Article shall come from the reallocation of funds and shall not decrease the amounts

4

available to other members of the Bargaining Unit as provided for by the provisions of this Agreement.

(Doc. 82 at 2).

Dr. McTague argues that an EPA plaintiff is not required to exhaust administrative remedies or file a formal grievance prior to bringing a claim in district court, and evidence that Dr. McTague did not avail herself to the Agreement's grievance process has the potential to mislead the jury into thinking that she had an obligation to pursue a union-backed remedy. (Doc. 78 at 1-2).

UC acknowledges that Dr. McTague did not have an obligation to utilize the Agreement's grievance process prior to filing this case, and represents that it will not make a "failure to exhaust administrative remedies" argument at trial. (Doc. 82 at 1-2). UC argues, however, that it should be able to offer evidence that Dr. McTague did not use an available process to seek an increase in her compensation. (*Id.* at 3).

The Court agrees with UC. At this juncture, Dr. McTague has not shown that evidence pertaining to the Agreement's grievance process is "clearly inadmissible for any purpose." As one example, the Complaint asserts that UC's violation of the EPA was "willful," and Dr. McTague's pretrial briefs indicate that she will attempt to establish willfulness at trial in order to put her claim within the EPA's three-year statute of limitations. (*See* Doc. 85 at 5). Whether a defendant "willfully" violated the EPA can be established either by proof that a defendant actually knew his conduct violated federal law or by reckless disregard of that fact. *See Virgona v. Tufenkian Import-Export*

*Ventures, Inc.*, Case No. 05 Civ. 10856 (GEL), 2008 U.S. Dist. LEXIS 72139, at * 24 (S.D. N.Y. Sept. 23, 2008).

Accordingly, evidence pertaining to UC's knowledge of the alleged pay discrepancy may be relevant to the parties' arguments at trial. At this point, the Court cannot conclude that evidence Dr. McTague did not utilize one available means of bringing the alleged pay discrepancy to UC's attention would be "clearly inadmissible for any purpose." The Court is comfortable with the fact that UC has agreed to not make an "exhaustion" argument and finds that a limiting instruction would be effective to prevent any alleged prejudice.

Accordingly, Dr. McTague's motion *in limine* to exclude evidence of her election not to use the AAUP's grievance process (Doc. 78) is **DENIED**.

**B. Untimely affirmative defenses.**

Dr. McTague asks the Court to prevent UC from presenting "untimely affirmative defenses." (Doc. 79 at 1).

Under the EPA, employers shall not discriminate by paying wages to employees "at a rate less than the rate at which he pays wages to employees of the opposite sex" for equal work **except** where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential which is based on any other factor other than sex. 29 U.S.C. § 206(d)(1).

6

In its Answer, UC stated: "[a]ny differences in compensation identified by [Dr. McTague] were based on a factor or factors other than sex, and the differences in qualifications and experience of the alleged comparators." (Doc. 5 at 9).

Dr. McTague argues that UC did not plead "any of the other three affirmative defenses provided by the EPA" (*i.e.*, seniority system, merit system, or quantity or quality of production) and raising those now would therefore cause unfair surprise to Dr. McTague and would unreasonably broaden the issues after the close of discovery. (Doc. 79 at 2).

UC responds that it does not intend to present any evidence of the first three affirmative defenses at trial, and will rely on arguments similar to those it made at the summary judgment stage: that any pay discrepancies between Dr. McTague and her male comparators were due to factors "other than sex" including market factors, publication records, research activity and grants, and salary at other employers in the national market. (Doc. 83 at 2).

The Court finds Dr. McTague's motion *in limine* not well-taken for three reasons. First, the EPA's "factor other than sex" defense is a "broad catch-all" created "due to the impossibility of predicting and listing each and every exception." *Taylor v. White*, 321 F.3d 710, 717-18 (8th Cir. 2003). This affirmative defense encapsulates an "almost limitless number of factors, so long as they do not involve sex." *Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989). Dr. McTague has not identified any evidence upon which UC has relied, or upon which UC is expected to rely at trial, that does not fall within the "factor other than sex" defense that UC pled in its Answer.

Second, the Court is hesitant to exclude broad categories of information without explanation by Dr. McTague as to which specific evidence she seeks to exclude. UC concedes that it does not intend to present any evidence of a seniority system, a merit system, or a system which measures earnings by quality or quantity of production, and Dr. McTague does not identify any evidence that may be introduced at trial that falls within those descriptions.

Third, and similarly, Dr. McTague's failure to identify the precise evidence she seeks to exclude is troubling because words such as "merit system" are inherently vague. UC argued in its motion for summary judgment (and without an objection from Dr. McTague) that Dr. McTague's male comparators received higher salaries because of their "merit." (*See* Doc. 50 at 54, "the hiring of Richard Beck, and his level of compensation, was based on merit and the fact that he had a long list of publications, and had received several large research grants from outside of UC"). Does this evidence fall within the purview of a "merit system" that would be excluded if the Court were to grant Dr. McTague's motion? The Court wishes to avoid arguments of this nature at trial. It is more efficient for Dr. McTague to simply object to the introduction of any specific evidence or argument that she contends UC has waived.

Accordingly, Dr. McTague's motion *in limine* to estop the untimely raising of affirmative defenses (Doc. 79) is **DENIED**.

## IV.  CONCLUSION

For the foregoing reasons:

1. Dr. McTague's motion *in limine* to exclude evidence regarding her election not to use the AAUP's grievance process (Doc. 78) is **DENIED**; and

2. Dr. McTague's motion *in limine* to estop the untimely raising of affirmative defenses (Doc. 79) is **DENIED**.


**IT IS SO ORDERED**.


Date: February 2, 2018

Timothy S. Black
United States District Judge